**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSON DOMINGO GUZMAN PEREZ, ) <br><br> Petitioner, ) <br><br> v. ) <br><br> WARDEN, et al., ) <br><br> Respondents. ) <br> _____ ) | Case No. ED CV 25-3140 FMO (ADS) <br><br><br> **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

On November 21, 2025, Wilson Domingo Guzman Perez ("petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Pamela Bondi, Attorney General of the United States; Ernesto Santacruz Jr., Field Office Director of the Los Angeles ICE Field Office; and the Warden of the Desert View Annex in Adelanto, California (collectively, "respondents"), in their official capacities. (Dkt. 1, Petition at ¶¶ 19-23).

Petitioner also filed an Ex Parte Application for a Temporary Restraining Order ("Application"), seeking his immediate release pending adjudication of his Petition, and an order enjoining respondents from re-detaining him and from transferring him out of this District pending final resolution of his case. (See Dkt. 2-1, Application at 2). Respondents filed their Opposition to petitioner's Application on November 24, 2025. (Dkt. 10, Opp.). Petitioner filed his Reply on November 25, 2025. (Dkt. 12, Reply).

Having reviewed and considered all the briefing filed with respect to petitioner's Application, the court finds that oral argument is not necessary to resolve the Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

Petitioner is a Guatemalan citizen who applied for admission to the United States at the DeConcini Port of Entry in Nogales, Arizona, on October 20, 2016. (Dkt. 1, Petition at ¶ 25). Petitioner was deemed inadmissible and subject to removal under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), as amended, 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1] (See id. at ¶ 27). However, petitioner was paroled that same day under § 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A). (Id. at ¶ 28); (Dkt. 11-5, Exh. G, Notice Authorizing Parole); (Dkt. 2-1, Application at 3). On the same day he was paroled, petitioner also received a Notice to Appear ("NTA"), (Dkt. 1, Petition at ¶¶ 29, 31); (Dkt. 11-3, Exh. C, Notice to Appear at ECF 1-3), and was scheduled for a master calendar hearing before an immigration judge on May 24, 2017. (Dkt. 11-6, Exh. F, Notice of Hearing). Petitioner has a final immigration hearing on March 26, 2026.[2] (Dkt. 1, Petition at ¶ 31). Petitioner's mother has a pending asylum case in which petitioner is listed as a derivative beneficiary. (See id. at ¶ 37); (Dkt. 2-1, Application at 3).

On September 25, 2025, petitioner was assisting a family member in paying a traffic citation at a courthouse. (Dkt. 1, Petition at ¶¶ 2, 32); (Dkt. 2-1, Application at 3). As he was leaving the courthouse, DHS officers surrounded petitioner's vehicle and forcibly removed him despite the fact that he presented the DHS officers with his Employment Authorization Document ("EAD"). (See Dkt. 1, Petition at ¶¶ 34-35); (Dkt. 2-1, Application at 3). Petitioner was subsequently arrested and

---

[1] Unless otherwise indicated, all further section references are to Title 8 of the United States Code.

[2] It is unclear from the parties' papers what has transpired in petitioner's immigration proceedings since the setting of the master calendar hearing in May 2017. Respondents claim that petitioner's parole "expired by its own terms" on April 22, 2017, (See Dkt. 15, Respondents' Sur-Reply at 2), but that does not explain why no action was taken by respondents for nearly nine years.

detained at the Desert View Annex in Adelanto.  (Dkt. 1, Petition at ¶¶ 35-36); (Dkt. 2-1, Application at 3).  Petitioner has remained in Adelanto since his arrest in September.  (Dkt. 1, Petition at ¶¶ 2, 38); (Dkt. 2-1, Application at 3).

On October 15, 2025, petitioner requested bond but was denied the same day without any explanation as to why he was a danger to the community and/or a flight risk.  (See, generally, Dkt. 11-4, Exh. D, Bond Payment Request); (see Dkt. 1, Petition at ¶¶ 4-5).  Rather than address the factors necessary to assess whether an individual should be granted bond, respondents simply stated that bond was being denied because an "alien cannot be released on bond[.]"  (Dkt. 11-4, Exh. D, Bond Payment Request).

Petitioner alleges that his detention violates his due process rights under the Fifth Amendment's Due Process Clause.[3]  (See Dkt. 1, Petition at ¶¶ 59-64).  Petitioner also alleges that his detention is in violation of respondents' statutory duties under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.  (See id. at ¶¶ 48-58).

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions or temporary restraining orders ("TRO").  See Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction.  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)).  The standards for a temporary restraining order and a preliminary injunction are the same.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788

---

[3]  Although petitioner raises both substantive and procedural due process violations, the core of petitioner's constitutional challenge appears to be on procedural grounds.  (See Dkt. 1, Petition at ¶¶ 59-64); (Dkt. 2-1, Application at 5).

F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same). "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20, 129 S.Ct. at 374. Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

**DISCUSSION**

I.    LOCAL RULE 65-1.

As an initial matter, respondents contend that the Application should be denied because petitioner failed to comply with Local Rule 65-1 by not submitting a certification and supporting declaration. (See Dkt. 10, Opp. at 1-2). However, it appears that petitioner's counsel inadvertently failed to attach the declaration and exhibits referenced in both the Petition and Application. (See Dkt. 12, Reply at 2). Counsel has since filed those documents on the docket, (see Dkt. 11, Exhibits in Support of Petition), and the court gave respondents an opportunity to address the declaration and exhibits, (see Dkt. 14, Court's Order of December 8, 2025), which respondents did in their sur-reply. (Dkt. 15, Respondents' Sur-Reply). Accordingly, the court rejects respondents' contention.

II.    LIKELIHOOD OF SUCCESS ON THE MERITS.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533

U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001).  "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."  Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted).  Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a hearing before the State deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990).

Petitioner's procedural due process claim involves two steps:  "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Fernandez Lopez v. Wofford, 2025 WL 2959319, *3 (E.D. Cal. 2025) (internal quotation marks omitted).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).  To determine what protections due process demands in a given situation, courts consider three factors:  (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) the government's interest, including the function involved and the burdens that would be imposed by additional process.  See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

A.      Petitioner Possesses a Protected Liberty Interest.

Petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment."  Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) (noting that being free from imprisonment is "the most elemental of liberty interests") (internal quotation marks omitted).  While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release.'"  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (alteration

marks omitted). Accordingly, "[w]hen an immigrant is placed into parole status after having been detained, a protected liberty interest may arise," and the "Due Process Clause may protect this liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections." Espinoza v. Kaiser, 2025 WL 2675785, *9 (E.D. Cal. 2025).

Respondents contention that petitioner's "parole status [] expired automatically" and he was therefore "properly detained and placed into removal proceedings[,]" (Dkt. 15, Respondents' Sur-Reply at 2), is irrelevant because "petitioner's liberty interest did not expire along with his parole." Omer G.G. v. Kaiser, et al., 2025 WL 3254999, *5 (E.D. Cal. 2025); see, e.g., Ramirez Tesara v. Wamsley, et al., 2025 WL 2637663, *3 (W.D. Wash. 2025) (finding that "[c]ontrary to Respondents' arguments, this private interest did not expire along with Petitioner's parole agreement."). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process[.]" Ramirez Tesara, 2025 WL 2637663, at *3. Indeed, petitioner's liberty interest is particularly strong given his initial parole status in 2016 and the fact that respondents did not seek to arrest or detain him when his parole allegedly expired in April 2017, or at any point in the nearly nine years that followed. See, e.g., Rodriguez Cabrera v. Mattos, et al., 2025 WL 3072687, *11 (D. Nev. 2025) (finding liberty interest "particularly weighty" in light of time elapsed and the petitioner's family and community ties). Thus, the first Mathews factor weighs strongly in favor of petitioner.

B.     Risk of Erroneous Deprivation is High.

Under the circumstances, due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to his detention. See, e.g., Ramirez Tesara, 2025 WL 2637663, at *4 (granting TRO under similar circumstances and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing in front of an immigration judge"); Rodriguez Cabrera, 2025 WL 3072687, at *15 (granting habeas petition where petitioner was re-detained three years after the expiration of his parole, and enjoining the government "from re-detaining Petitioner in connection with his current removal proceedings without an individualized bond hearing"); see also Pinchi, 792 F.Supp.3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously

deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing."); Valdez v. Joyce, 2025 WL 1707737, *4 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted).

Here, there is no evidence, nor even a suggestion, that respondents employed any procedural safeguards before detaining petitioner.[4] (See, generally, Dkt. 10, Opp.). Accordingly, the court finds, under the second Mathews factor, that the risk of an erroneous deprivation of petitioner's liberty interest is high. See, .e.g., Fernández López, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado, 2025 WL 3205356, at *24 ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

C.     Respondents' Interest Does Not Outweigh the First Two Factors.

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." J.U. v. Maldonado, 2025 WL 2772765, *10 (E.D.N.Y. 2025) (internal quotation marks and alterations omitted). But respondents do not contend that petitioner was detained for such purposes. (See, generally, Dkt. 10, Opp.). Indeed, the record shows that for more than nine

---

[4] Respondents contend without elaboration that petitioner "was not entitled to additional notice requirements relating to his old parole expiration." (Dkt. 15, Respondents' Sur-Reply at 2). The court is not persuaded by respondents' unsubstantiated contention. See, e.g., McClain v. Wells Fargo Bank, N.A., 2012 WL 851402, *3 (N.D. Cal. 2012) (rejecting defendants' "undeveloped argument" because they "neither cited any legal authority nor provided the requisite legal analysis");see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

years, petitioner has complied with his immigration requirements, and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community.  Thus, respondents have "failed to show a significant interest in Petitioner's continued detention."  Maldonado, 2025 WL 2772765, at *10.

Because each of the Mathews factors favors petitioner, the court finds that he has shown a likelihood of success on the merits of his procedural due process claim.[5]

III.    LIKELIHOOD OF IRREPARABLE HARM.

Respondents contend – without citing any authority – that petitioner's "asserted injury by detention is not itself inherently irreparable[,]" and that "other avenues of potential relief for a detention [petitioner] contends is unwarranted" exist.  (Dkt. 10, Opp. at 6).  But respondents do not specify what those "other avenues" are, (see, generally, Dkt. 10, Opp.), and, in any event, such a contention is meritless given that petitioner recently requested bond and was denied the same day without any explanation as to why he was a flight risk or a danger to the community. (See, generally, Dkt. 10, Opp.); (see Dkt. 11-4, Exh. D, Bond Payment Request) (noting the denial reason as "alien cannot be released on bond").

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time").  Where "the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted).  Here, there is no doubt that petitioner has been and will continue to be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

---

[5]  Thus, the court need not address petitioner's APA claim.

IV.   BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner.  Respondents assert that "it is well settled that the public interest in enforcement of the United State's immigration laws is significant."  (Dkt. 10, Opp. at 6).  However, that interest cannot justify the violation of petitioner's constitutional rights.  See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws[,] . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

V.   SCOPE OF RELIEF.

Finally, respondents assert that the "narrowly tailored remedy would not be immediate release, but rather . . . rectifying th[e] procedural deficiency; or . . . seeking a bond hearing consistent with [petitioner's] rights as a detainee[.]" (Dkt. 10, Opp. at 4).  However, "[c]ourts have long held that the status quo ante litem for the purposes of considering a temporary restraining order or preliminary injunction refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." Doe 4 v. Lyons, 783 F.Supp.3d 1281, 1298–99 (W.D. Wash. 2025) (internal quotation marks omitted); see GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (same).  "An interpretation of status quo as the moment before filing a lawsuit but after alleged misconduct began would lead to absurd situations, in which plaintiffs could never bring suit once infringing conduct had begun." Doe 4, 783 F.Supp.3d at 1298–99 (internal quotation marks omitted).  In short, the court finds that petitioner's request for immediate release is necessary to restore the status quo ante litem.  See, e.g., Ramirez Tesara, 2025 WL 2637663, at *5 (holding petitioner's

immediate release was necessary to maintain the status quo <u>ante litem</u> and prevent irreparable harm while claims were adjudicated on the merits).

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's <u>Ex Parte</u> Application **(Document No. 2)** is **granted** as set forth in this Order.

2. Respondents shall release petitioner from immigration detention forthwith, and shall not impose any release restrictions on petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within twenty-four (24) hours of releasing petitioner.

4. Respondents shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner shall not be detained unless respondents demonstrate at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community. If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5. Given that the standard for granting a TRO and preliminary injunction are the same, <u>see</u> <u>Stuhlbarg Int'l Sales Co.</u>, 240 F.3d at 839 n. 7, the court will construe petitioner's Application as an application for a preliminary injunction ("PI Application").

6. Respondents shall file their opposition to the PI Application by no later than **December 18, 2025**. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

7. Petitioner shall file his Reply in support of his PI Application by no later than **December 22, 2025**.

8.  The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or take the PI Application under submission.

Dated this 15th day of December, 2025.

/s/
Fernando M. Olguin
United States District Judge

11